

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADDIE MCCALL                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        No. 03 C 5948
                                      )
MICHAEL SHEAHAN, et al.               )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Addie McCall, ("McCall"), individually and as Mother and Next Friend of

Charles Jackson ("Jackson"), filed a first amended complaint on February 18, 2005 against

defendants Michael F. Sheahan in his official capacity as Sheriff of Cook County, Cook County

Correctional Officer Joseph Gambino ("Gambino"), and other Cook County Correctional

Officers (collectively "defendants"). (Dkt. No. 53). The defendants filed the pending motion on

March 31, 2005 for summary judgment. (Dkt. No. 63). The defendants also filed the pending

motions to strike portions of McCall's Local Rule 56.1 material on May 19, 2005. (Dkt. No. 77,

79). For the reasons set forth below, this court grants in part, and denies in part, the defendants'

motion for summary judgment and denies the defendants' motions to strike.

## BACKGROUND

Unless otherwise noted, the parties agree to the following facts. Jackson was arrested by

the Chicago Police on June 22, 2001 and detained in the Cook County Department of Corrections

from June 23, 2001 until his death on August 26, 2001. (Dkt. No. 65 at ¶ 12-13). During early

August 2001, Jackson began to experience headaches, sharp backaches and was up at night

moaning in pain. (Dkt. No. 67 at ¶ 3). Jackson started to fill out medical request forms during late July or early August 2001. (*Id.* at ¶ 5). McCall asserts that Jackson requested medical attention from correctional officers during this time period of late July to early August 2001 and that correction officials refused to offer him medical attention. (*Id.* at ¶¶ 4-7).

The parties agree that Jackson was taken to Cermak Health Services at some point in August 2001 (Dkt. No. 67, at ¶ 8; Dkt. No. 81 at ¶ 8), saw a doctor and then later an ophthalmologist who examined Jackson's swollen eye. (Dkt. No. 67, at ¶ 10; Dkt. No. 81 at ¶ 10). The parties disagree over almost everything else related to this visit including the date that it occurred, whether Jackson was suffering from bacterial sinusitis, whether a doctor could have identified that illness (assuming that Jackson was suffering from it), what other treatment Jackson received, whether the ophthalmologist recommended other treatment, specifically an x-ray, and the physical location of Cermak Health Services.

The parties agree that by August 24, 2001, two days before Jackson's death on August 26, 2001, Jackson had contracted meningitis. (Dkt. No. 67, at ¶¶ 13; Dkt. No. 81 at ¶¶ 13). McCall asserts that Jackson would have been exhibiting symptoms of his illness including increasing confusion, change in mental status, becoming more sleepy, a stiff neck and fever. (Dkt. No. 67, at ¶ 13). McCall argues that Jackson had additional symptoms including the swelling of his eye to the size of a tennis ball, he was disoriented and slow, could not hold onto his belongings and had a bad odor. (*Id.* at ¶ 14). Furthermore, McCall argues that the correctional officers were aware of Jackson's condition because Jackson interacted with the correction officers, the other prisoners located with Jackson informed the officers of his condition, and Jackson's sickness was so apparent that the correction officers had to be aware of it when they performed their routine

2

inspections.

Finally, McCall argues that on the night of Jackson's death, the entire tier of prisoners were very aware of Jackson's condition and his immediate need for medical attention, were screaming, chanting and complaining in an attempt to get Gambino, the officer on duty, to come and help Jackson but Gambino failed to do so. McCall also argues that Gambino failed to perform the routine checks of the tier, including Jackson's cell, and falsified his report. (Dkt. No. 67, at ¶ 52).

The defendants dispute McCall's version of the events. They assert that Jackson never asked for medical attention. The defendants also challenge McCall's version of events arguing that much of McCall's Local Rule 56.1 material should be stricken. (Dkt. Nos. 77, 79).

McCall filed her first amended complaint on February 18, 2005. (Dkt. No. 53). Count One is a § 1983 claim for deliberate indifference against Gambino and other unknown correctional officers, Count Two is a *Monell* claim against Sheahan in his official capacity, and Count Three is a state law wrongful death claim against Gambino and other unknown correctional officers.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*,

3

477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Exercise Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

### A. Claims Against Officer Gambino

#### 1. Count One: Federal Deliberate Indifference Claim

"A prison official violates the Fourteenth Amendment when he is deliberately indifferent to a substantial risk of serious harm to the inmate." *Castellano v. Chicago Police Dep't.*, 129 F. Supp. 2d 1184, 1189 (N.D. Ill. 2001) (citing *Payne v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1998)). The plaintiff must demonstrate "that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Jackson v. City of Chicago*, No. 00 C 538, 2001 WL 1286804, at *5 (N.D. Ill. Oct. 23, 2001) (citations omitted). "In order to determine deliberate indifference, the court must examine a two-part test: (1) an objective component which examines whether the medical

4

condition was serious, and (2) a subjective component which examines whether the defendants were deliberately indifferent to that serious medical need." *Castellano*, 129 F. Supp. 2d at 1189 (citing *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)).

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (citations omitted). Meningitis, the condition that resulted in Jackson's death, is a serious medical condition.

Gambino argues that summary judgment is proper because McCall has failed to demonstrate his he had subjective deliberate indifference to Jackson's objectively serious medical condition. A defendant is subjectively deliberately indifferent to an inmate's serious medical condition when "the official knows of and disregards an excessive risk to an inmate['s] health or safety." *Castellano*, 129 F. Supp. 2d at 1290 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There is sufficient evidence in the record to create a genuine issue of fact as to whether Gambino was subjectively indifferent to Jackson's serious medical condition. McCall's medical witnesses argue that Jackson's symptoms should have been severe and readily apparent. The inmate witnesses allege that both they and Jackson attempted to obtain medical attention for Jackson but were refused. It is for the jury to determine whether Gambino was informed of Jackson's condition and ignored it, as McCall argues, or whether Gambino was never informed as he argues.

Gambino also argues that he is entitled to summary judgment under the statute of

5

limitations. The claim was brought against Gambino through the first amended complaint filed on February 18, 2005. Jackson's death occurred on August 25, 2001 and the statute of limitations for a § 1983 claim is two years. *See Orange v. Burge*, No. 04 C 168, 2005 WL 742641, at *5 (N.D. Ill. Mar. 30, 2005).

The original complaint in this case was filed within the two year statute of limitations on August 22, 2003. The claims against Gambino are properly brought within the statute of limitations because those claims relate back to the original complaint for statute of limitations purposes pursuant to Rule 15(c)(3) of the Federal Rules of Civil Procedure. Furthermore, McCall has a right to argue that the statute of limitations are equitably tolled due to Gambino's alleged concealment. *See Voogd v. Pavilion Found.*, No. 03 C 2465, 2004 WL 877996, at *4 (N.D. Ill. Apr. 23, 2004).

### 2. Count Three: State Law Wrongful Death Claim

Gambino argues that McCall's state law wrongful death claim should be barred under the state law statute of limitations contained in the Illinois Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). 745 ILCS 10/1-101 *et seq.* The Tort Immunity Act contains a one-year statute of limitations and the "statute of limitations begins to run when a plaintiff knows or should have known of the commission of the alleged illegal act." *Thompson v. City of Chicago*, No. 01 C 8883, 2004 WL 1197436, at *3 (N.D. Ill. May 28, 2004). Jackson died on August 25, 2001 yet McCall did not file her original complaint until almost two years later on August 22, 2003.

McCall responds that the statute of limitations should not be applied in this case because Gambino fraudulent concealment of information by not properly completing his report and this

6

impacted her ability to identify him in a timely manner. She also argues that she was unable to identify all the witnesses needed for her claim within the one-year statute of limitations period.

McCall's original complaint filed on August 22, 2003 names unknown correctional officials as defendants for the state law wrongful death count. She did not need to know of Gambino's identity to comply with the statute of limitations since she was able to file an amended complaint at a later date that allowed for a relationship back to the original complaint. McCall has no good reason for missing the one-year Illinois statute of limitation because of the availability of filing her complaint against an unknown official and then later amending the complaint once determining the official's identity through discovery. McCall's state law claims are barred under the one-year statute of limitation.

## B. Count Two: *Monell* Claim against Sheahan

McCall brings a deliberate indifference claim against Sheahan in his official capacity as Cook County Sheriff. Under *Monell*, a municipality cannot be held liable for the acts of its employees under *respondeat superior* but instead can only be liable for its own deliberate indifference. *Anderson v. Templeton*, Nos. 00 C 3065, 01 C 1115, 2002 WL 226882, at *2 (N.D. Ill. Feb. 14, 2002) (citations omitted). "A municipality is liable under § 1983 when a deprivation of constitutional rights is caused by a municipal policy or custom." *Franklin v. City of Evanston*, 384 F.3d 838, 843 (7th Cir. 2004) (citing *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658 (1978)). "Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents." *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir. 1995) (quoting *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992)).

To meet her ultimate burden for a *Monell* claim, McCall must show that (1) the

7

municipality had an express policy, that when enforced, caused the constitutional deprivation, (2) the municipality had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law, or, (3) the plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

McCall argues that Sheahan's failure to train the correctional officers is so widespread of a practice as to create a custom or usage with the force of law. Inadequate training "may serve as the basis of § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the person with whom the [government official] came into contact." *Ashworth v. Round Lake Beach Police Dep't.*, No. 03 C 7011, 2005 WL 1785314, at *3 (N.D. Ill. July 21, 2005 (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "The alleged failure to train or supervise must be closely related to the ultimate injury and ... the plaintiff must 'prove that the deficiency in training actually caused the constitutional violation.'" *Hanno v. Sheahan*, No. 01 C 4677, 2004 WL 2967442, at *13 (N.D. Ill. Nov. 29, 2004). The plaintiff must show "that the defendants were on notice of constitutional violations committed by their inadequately trained employees." *Id.* (citing *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994)).

McCall has provided no evidence that Sheahan was on notice of the alleged constitutional violation being caused by his alleged failure to train his employees. McCall cannot sustain a *Monell* claim in this case and therefore summary judgment must be granted in Sheahan's favor.

## C. Claims Against the Other Cook County Correctional Officials

McCall's first amended complaint names both Gambino and other Cook County Correctional Officers. "Although a plaintiff may bring suit against an unknown defendant and

8

undertake discovery in order to identify the party who has injured her, a case cannot proceed to trial against an unknown defendant." *Ciesielski v. Hooters of America, Inc.*, No. 03 C 1175, at *8 n.12 (N.D. Ill. July 28, 2004) (citations omitted). The unnamed Cook County Correctional Officers are dismissed and this case shall go forward only as to defendant Gambino.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment of March 31, 2005 (Dkt. No. 63), is granted in part and denied in part. Counts Two and Three are dismissed in their entirety. Defendants Sheahan and the unnamed correctional officers are dismissed from this action. The defendants' motions to strike portions of McCall's Local Rule 56.1 material of May 19, 2005 (Dkt. No. 77, 79), are denied. This case is set for a report on status on September 1, 2005 for the entry of an order setting dates for the submission of the Pre Trial Order, Pre Trial Conference and Trial. The parties are encouraged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 23, 2005

9